**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 08-cv-01133-KT-CBS
_____

COORSTEK, INC.,

      Plaintiff,

v.

STEVEN F. REIBER, and
MARY L. REIBER,

      Defendants,

v.

COORSTEK, INC.,

      Counter-Defendant.
_____

**COORSTEK'S REPLY IN FURTHER SUPPORT OF EXPEDITED MOTION TO
COMPEL DICOVERY OF COMMUNICATIONS BETWEEN ROBERT ATKIN AND
DEFENDANTS' PATENT COUNSEL
[REDACTED FOR PUBLIC FILING]**
_____

Plaintiff CoorsTek, Inc. ("CoorsTek") hereby submits the following Reply in Further Support of its Expedited Motion to Compel Discovery of Communications Between Robert Atkin and Defendants' Patent Counsel ("Motion").

## I.    INTRODUCTION

Despite the Reibers' attempts to sidestep the fundamental issues at hand, the dispute raised in CoorsTek's Motion is properly before this Court and is straightforward: during Dr. Atkin's deposition, the Reibers inappropriately asserted the attorney-client privilege over communications between Dr. Atkin – a third party – and the Reibers' patent counsel ("Patent

Counsel"). The attorney-client privilege does not protect these communications – because there was not a privileged relationship with Dr. Atkin. Even assuming there was, the Reibers waived any privilege that may have existed through their voluntary actions.[1]

## II.   ARGUMENT

### A.   This Court Has Jurisdiction to Hear CoorsTek's Motion, as it is Directed at the Reibers, and not at Dr. Atkin.

The Reibers argue that this Court lacks jurisdiction to afford the relief sought in CoorsTek's Motion because the subpoena to Dr. Atkin issued from the U.S. District Court for the Central District of California and the deposition of Dr. Atkin took place in California. *See* Opp., at 7. This argument is without merit. As set forth in its Motion, CoorsTek seeks to resolve issues raised by the Reibers' (and not Dr. Atkin's) claim of the attorney-client privilege. *See* Motion, at 19. During Dr. Atkin's deposition, counsel for the Reibers invoked the attorney-client privilege and instructed Dr. Atkin not to answer a series of questions regarding Dr. Atkin's communications with the Reibers and their Patent Counsel.

**[REDACTED]**

CoorsTek seeks discovery of those communications over the Reibers' assertion of the attorney-client privilege.

This issue was addressed and decided in *Platypus Wear, Inc. v. K.D. Co.*, 905 F. Supp. 808, 810 (S.D. Cal. 1995), where the Southern District of California held that a motion for an order overruling a party's claim of privilege is properly made in the court where the action is

---

[1] In their Opposition to CoorsTek's Motion ("Opp."), the Reibers do not dispute the relevance of the communications at issue. Accordingly, should the Court grant CoorsTek's Motion, such communications are relevant and thus discoverable under Fed. R. Civ. P. 26(b)(2).

2

pending, even though the non-party deponent was being deposed out of state. *See id.* In reaching this holding the *Platypus Wear* court stated as follows:

> Plaintiff does not seek an order compelling Mr. Weiner to appear and testify, but rather it seeks an order overruling Defendants' claim of the accountant-client privilege. Such motion is properly brought in this Court. *See* Fed. R. Civ. P. 37(a)(1) ("An application for an order to a party shall be made to the court in which the action is pending."); Fed. R. Civ. P. 30(d)(3) ("At any time during a deposition, on motion of a party or of the deponent . . . the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c).") Therefore, this is the appropriate Court to decide the motion.

*See id*. Here, as in *Platypus Wear*, CoorsTek does not seek an order compelling Dr. Atkin to appear and testify, but rather seeks an order overruling the Reibers' claim of attorney-client privilege. *See* Motion, at 19 ("Accordingly, the Reibers' instruction to Dr. Atkin not to answer questions regarding his communications with the Reibers' Patent Counsel was improper, and CoorsTek is entitled to discover the nature and content of those communications.").

**[REDACTED]**

The Reibers are parties to this case and subject to this Court's jurisdiction. Rules 37(a)(1) and 30(d)(3), as applied in *Platypus Wear*, provide this Court with authority to decide CoorsTek's Motion.[2] Indeed, such a result is consistent with the spirit of the Federal Rules – had the Reibers' counsel moved to terminate the deposition as threatened (*see id*. at 183:15-184:17) –

---

[2] This Court's jurisdiction over this issue is particularly appropriate as the subpoena was issued from the Central District of California, where Dr. Atkin resides, but Dr. Atkin willingly chose to appear and testify pursuant to that subpoena in a different district – the Northern District of California – and neither of those Districts have any nexus to the substantive issues raised by this action.

3

it is clear that this Court would have jurisdiction to adjudicate that termination, and the exclusive jurisdiction to resume the examination.  *See* Fed. R. Civ. P. 30(d)(3).

**B.  The Reibers' Accusation that CoorsTek is Using this Motion in an Attempt to Obtain Additional Deposition Time with Dr. Atkin is Unfounded.**

The Reibers also argue that CoorsTek brought this Motion for improper reasons because (1) CoorsTek's requested relief is broad in relation to the Reibers' objection to a specific set of questions, and (2) CoorsTek did not attempt to resolve "issues of attorney-client privilege" prior to Dr. Atkin's deposition.  *See* Opp., at 8.  These arguments also lack merit.

The fact that the Reibers only objected to a "very specific set" of questions is both inaccurate and irrelevant.  The Reibers' counsel repeatedly instructed Dr. Atkin in a broad sense not to answer any questions related to his communications with Patent Counsel,

**[REDACTED]**

[3] CoorsTek asked questions relating to the subject matter of each communication between Dr. Atkin and Patent Counsel, which, depending upon Dr. Atkin's responses, may have necessitated follow-up questions.  As counsel for CoorsTek made clear on the record, CoorsTek sought and seeks discovery of communications between Dr. Atkin and Patent Counsel; intended to seek the relief requested by this Motion from this Court; and intended to reconvene the deposition of Dr. Atkin should the Court rule in its favor.  *See id.* at 185:3-23.  Particularly because the Reibers' "disclosure of a privileged communication waives the privilege over other communications of the same subject matter," *see GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1275 (Fed. Cir. 2001), the scope of CoorsTek's requested relief is proper.

---

[3] Exhibits to this Reply are consecutively numbered following the last exhibit in CoorsTek's Motion.

Moreover, CoorsTek was not obligated to resolve "issues of attorney-client privilege" prior to conducting the deposition of Dr. Atkin. *See Pritchard v. County of Erie*, No. 04CV534C, 2006 WL 2927852, at *3 (W.D.N.Y. Oct. 12, 2006) ("normal practice" dictates that deposition should proceed so that parties may "create a record of where questionable inquiries, objections, or assertions of privilege arose and furnish a context for the dispute"). In fact, proceeding with Dr. Atkin's deposition was required, since CoorsTek had no way of knowing "issues of attorney-client privilege would arise" given that the Reibers had already voluntarily disclosed communications between Dr. Atkin and Patent Counsel prior to the deposition.[4]

### [REDACTED]

Without first questioning Dr. Atkin, CoorsTek would have had an insufficient record upon which to bring this Motion.

C.  **The Reibers Fail to Make a "Detailed Factual Showing" that Dr. Atkin was (1) the Functional Equivalent of Their Employee and (2) Subject to the Privilege.**

The Reibers fare no better in their substantive attempts to justify their invocation of the attorney-client privilege. The Reibers do not dispute that before application of the attorney-client privilege will be extended to non-employees, the Reibers must "make a detailed factual showing that the non-employee is the functional equivalent of an employee and that the information sought from the non-employee would be subject to the attorney-client privilege if he were an employee of the party." *Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002). The Reibers have not made the showing necessary to justify extending the privilege to Dr. Atkin.

---

[4] CoorsTek was not a party to the ITC proceeding, and in fact the Reibers refused to produce Dr. Atkin's deposition transcript from that proceeding in discovery in this case, requiring CoorsTek to obtain the transcript from Dr. Atkin himself. Thus, the fact that Dr. Atkin was deposed in this separate proceeding to which CoorsTek was not a party is not material to CoorsTek's ability to bring its Motion in this case.

It is undisputed that Dr. Atkin was not a client of the Reibers' Patent Counsel nor an employee of the Reibers or any of their wholly owned companies, facts the Reibers implicitly concede. Thus, for the Reibers to assert that Dr. Atkin's communications are privileged, they must establish that the Reibers' privilege extends to a third party who, at best, was an independent contractor, but did not sign any written agreement with the Reibers, was not paid directly by the Reibers, and was not subject to the terms of any written agreement with the Reibers. This the Reibers have not done.

**[REDACTED]**

**[REDACTED]**

*See* Opp. at 9-10; *see also* Opp. Ex. C (redacted Atkin PE Ceramics Business Card).  This is the first time CoorsTek has seen this business card, despite the fact that this document is responsive to a number of CoorsTek's requests for production of documents served more than a year ago.  *See*, *e.g.*, Ex. N, RFP Nos. 1, 4, 7-8, 14 and 17.  The business card also raises more questions than it resolves.  While Steven and Mary Reiber each attest in separate declarations that they individually received this business card, the face of the business card, which includes the handwritten notation "Anza," suggests that it comes from a source other than the Reibers' files since it is unclear why the Reibers would make this notation, given that Anza is their wholly-owned business.  It is also puzzling why the business card contains redactions if it derives from the Reibers' files.[5]

Most importantly, though, the business card does not establish that Dr. Atkin was an employee of P.E. Ceramics, or as such, was the "functional equivalent of an employee" of the Reibers.  The Reibers do not cite any authority to suggest that their purportedly mistaken belief that Dr. Atkin was an employee of P.E. Ceramics is sufficient to justify such an extension of the attorney-client privilege,

**[REDACTED]**

---

[5] The only basis for redacting material in discovery under Fed. R. Civ. P. 26(b) is that the material is subject to the attorney-client privilege or work product immunity.  Yet the Reibers have not listed this document on a privilege log.  Equally puzzling is the fact that the business card contains the bates label REIB000001, yet REIB000001, produced on August 25, 2008, was not the business card, but instead was the first page of the certified file history of the '479 Patent.

7

Perhaps recognizing their inability to meet their burden, the Reibers argue that "to the extent that any dispute of fact exists as to the status of Atkin's relationship with the Reibers and the Reibers' patent counsel, that is not a dispute that should be determined in this Motion." Opp., at 10. However, that is <u>precisely</u> the issue to be determined in CoorsTek's Motion. Because Dr. Atkin has no separate attorney-client relationship with the Reibers' Patent Counsel, the relationship between Dr. Atkin and the Reibers is fundamental to whether the Reibers can extend their attorney-client privilege to cover communications between Dr. Atkin and Patent Counsel. *See Horton*, 204 F.R.D. at 672.

On that issue, the Reibers assert that Dr. Atkin acted "essentially as a scrivener" for the Reibers with respect to the Patents-in-Suit, and as such, would be covered by the Reibers' privilege with their Patent Counsel. However, Dr. Atkin – now in two cases – claims that he is a co-inventor of the Patents-in-Suit. *See* Ex. O, at ¶ 7; Ex. P, at ¶¶ 8-19. To the extent that Dr. Atkin is a co-inventor and the Reibers' Patent Counsel acted as his counsel for purposes of the prosecution of the Patents-in-Suit, Dr. Atkin has the authority to waive the privilege. *See United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) ("the client alone holds the attorney-client privilege"); *see also Hillerich & Bradsby Co. v. MacKay*, 26 F. Supp. 2d 124, 126-27 (D.D.C. 1998) (co-inventors of patent shared a common legal interest in the development of the patent, thus neither could assert the privilege against the other in subsequent litigation between them).

**[REDACTED]**

The Reibers have not shown that Dr. Atkin was their employee or the functional equivalent of their employee. Absent such a showing, the Reibers' the attorney-client privilege does not, and cannot, extend to Dr. Atkin.

8

### D. Even if the Privilege Applied to Dr. Atkin, the Reibers Waived the Privilege.

The Reibers bear the burden of establishing not only that the communications at issue are privileged, but also "that the privilege was not waived." *Kovacs v. Hershey Co.*, No. 04-cv-01881, 2006 WL 3054167, at *5 (D. Colo. Oct. 25, 2006) (citing *United States v. Lewis*, 943 F.2d 58, 1991 WL 172666, at *3 (10th Cir. Sept. 5, 1991)). The privilege may be waived either expressly or by implication. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994). The Reibers failed to meet this burden: even if the attorney-client privilege applied to Dr. Atkin, which it does not, the Reibers waived the privilege through their voluntary actions.

#### 1. The Reibers' Voluntary Disclosure of Purportedly Privileged Information Waives the Privilege.

The Reibers do not dispute that voluntary disclosure of the content of an attorney-client communication waives attorney-client privilege as to all other communications on the same subject matter. They argue merely that they did not intend to waive the privilege. Opp., at 11. However, the Reibers' intent to waive (or not to waive) the privilege is irrelevant. *See* 8 J. Wigmore, Evidence § 2327, at 636 ("A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation."). Even if the Reibers could establish that their attorney-client privilege with Patent Counsel extended to Dr. Atkin (which they cannot), they have since waived that privilege. It is revealing that the Reibers fail to cite a single case supporting their conclusory assertions that they have not waived the privilege.

##### (a). The Fax produced in this litigation contains information that both the Reibers and the Federal Circuit recognize as privileged.

As the Reibers admit, the February 8, 1999 facsimile ("Fax") "reflects information that was included in the Reibers' provisional patent application." *See* Opp., at 12. The Fax on its

9

face states that "it was sent to John Ferrell," who was one of the Reibers' Patent Counsel responsible for prosecuting the Patents-In-Suit. *See* Motion, Ex. I. The Reibers' production of the Fax is entirely consistent with the fact that there is no privilege with respect to Dr. Atkin. However, assuming the privilege does extend to Dr. Atkin, the Fax is exactly the type of communication that would have been protected by the attorney-client privilege. <u>The Reibers cannot dispute this conclusion, as they originally listed the Fax on their Privilege Log</u>. *See* Ex. Q at 108 (listing February 8, 1999 communication from Robert Atkin to Steven F. Reiber and John S. Ferrell containing "notes regarding manufacturing of dissipative wedges"). Any argument in the Opposition that the Fax (1) was not a communication to Patent Counsel or (2) does not contain purportedly privileged information is baseless.[6]

As if the Reibers' voluntary production of documents listed on their Privilege Log alone does not evidence an intentional waiver of the privilege, the Federal Circuit has likewise found that the precise type of communication in the Fax is covered by the attorney-client privilege. *See In re Spalding Sports Worldwide*, 203 F.3d 800, 806 (Fed. Cir. 2000) (holding that invention record[7] submitted to patent attorney was protected by the attorney-client privilege). In *Spalding*, the Federal Circuit held that the fact that the information in the communication subsequently became part of the public record <u>did not</u> alter the privileged nature of the communication:

> The fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should

---

[6] It appears that the Reibers' present argument that the Fax is not a privileged communication, despite the fact that the Fax is listed on the Reibers' Privilege Log, is nothing more than an attempt to avoid the consequence of their intentional production of privileged information: waiver of the privilege as to all other communications on the same subject matter. *GFI*, 265 F.3d at 1275.

[7] "Invention records are standard forms generally used by corporations as a means for inventors to disclose to the [] patent attorneys that an invention has been made . . . ." *Id.* at 802 n.2. To the extent that the '479 Patent discloses a patentable invention, the Fax is for all intents and purposes an invention record, as it is purports to be a disclosure that an invention has been made.

10

>not preclude the assertion of the privilege over the communication in which that information was disclosed to the attorney. If an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney.

*Spalding*, 203 F.3d at 806 (quoting *Knogo Corp. v. United States*, 213 U.S.P.Q. 936, 940 (Ct. Cl. 1980)). Indeed, "an attorney cannot evaluate patentability or prepare a competent patent application without knowing the prior art and obtaining relevant technical information from the inventors." *Id*. If the Reibers are correct that their attorney-client relationship with Patent Counsel extends to Dr. Atkin, the Fax is a privileged communication under *Spalding* and the Reibers' voluntary disclosure of this communication constitutes waiver. *Id*.

Assuming that the Reibers are somehow correct that the Fax is not privileged because it contains information that "was subsequently made public record," then the Reibers should be compelled to produce all communications between them, Dr. Atkin, and any other contributor to the Patents-in-Suit and Patent Counsel – including both written and oral communications – that reflect "what was included in the Reibers' provision patent application" or any of the Patents-In-Suit. *See* Opp., at 12; *see also*, *e.g.*, Ex. Q (listing draft of patent applications on privilege log).

      (b).    **The testimony given by Mary Reiber and Dr. Atkin reveals communications with Patent Counsel.**

**[REDACTED]**

If the privileged relationship extends to Dr. Atkin, this testimony constitutes (1) a communication between client and attorney; (2) that according to the Opposition was intended to be kept confidential; (3) made for the purpose of obtaining legal advice (the Reibers admit that Patent Counsel was going to be prosecuting patents for the Reibers).[8] Assuming that Dr. Atkin's communications with the Reibers' Patent Counsel were covered by a privilege, this is the essence of an attorney-client communication. *See Fisher v. United States*, 425 U.S. 391, 403 (1976). Counsel for the Reibers neither objected to this testimony nor instructed the witnesses to not answer on the basis of privilege. At that point, any privilege was again waived. *Nguyen v. Excel Corp.,* 197 F.3d 200, 206 (5th Cir. 1999); *Diversified Grp., Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 515 (S.D.N.Y. 2003) (holding that failure to assert privilege in the course of deposition of a client who then testified regarding communications with attorney constituted waiver).

### 2. The Reibers Waived the Privilege by Putting Dr. Atkin's Communications with Patent Counsel at Issue in a Separate Litigation.

The Reibers waived any privilege they could assert over Dr. Atkin's communications with Patent Counsel by putting those communications at issue in separate litigation in California. In that case the Reibers seek a declaratory judgment of sole ownership of the Patents-In-Suit, alleging that Dr. Atkin "essentially acted as a scrivener" of the Reibers' ideas and has never claimed ownership of the Patents-in-Suit. Motion, Ex. J at ¶ 8. In response to these allegations and in a separate suit brought by Dr. Atkin, Dr. Atkin claims that he (1) "conceived of the materials to comprise the [dissipative ceramic bonding] tool tips and the ways of forming the

---

[8] A communication need not expressly request legal advice when the request is implied: "requests for legal services in preparing a patent application necessarily require the evaluation of technical information." *See In re Spalding*, 203 F.3d at 806.

materials comprising such tips," *see* Ex. P at ¶ 9; (2) memorialized those contributions in a document sent to a patent attorney in charge of prosecuting the Patents-in-Suit, *id.*; and (3)

**[REDACTED]**

The Reibers' characterizations of Dr. Atkin's communications with Patent Counsel in that litigation waives any privilege between Reibers' Patent Counsel and Dr. Atkin in this case. *See Carpenter v. Mohawk Indus., Inc.*, No. 07-CV-0049-HLM, 2007 WL 5971741, at *10-13 (N.D. Ga. Oct. 1, 2007), *aff'd on other grounds*, __ S.Ct. __, 2009 WL 4573276 (Dec. 8, 2009). The Reibers cannot affirmatively put the allegedly protected communications at issue in their litigation with Dr. Atkin while at the same time claim that the remainder of those very communications are privileged and exempt from discovery by CoorsTek in this case.[9] *Genentech, Inc. v. U.S.I.T.C.*, 122 F.3d 1409, 1416 (Fed. Cir. 1997) ("[o]nce the attorney-client privilege has been waived, the privilege is generally lost for all purposes and in all forums.").

    **3.    The Reibers Placed the Subject Matter of the Allegedly-Privileged Communications in Issue in Defense of CoorsTek's Inequitable Conduct Claim in this Litigation.**

The Reibers' production and reliance on purportedly-privileged communications with Patent Counsel is unsurprising, given that the Reibers have also put the nature of those communications in issue to defend against CoorsTek's inequitable conduct claim. *See* Motion, Ex. C, at 20-21 (characterizing nature of Dr. Atkin's involvement with Patent Counsel in

---

[9] The Reibers also characterize Dr. Atkin's testimony on these issues as false and self-serving, as the Reibers have not conducted a cross-examination of Dr. Atkin. However, CoorsTek has no obligation cede its seven hours of deposition time under the Federal Rules to the Reibers for cross-examination. *See Alexander v. F.B.I.*, 192 F.R.D. 20, 23 (D.D.C. 2000); Fed. R. Civ. P. 30(d)(2), Advisory Comm. Note, "[T]he need for each party to examine the witness may warrant additional time [beyond the seven hours]." As counsel for CoorsTek noted in the deposition, the Reibers could have served their own subpoena and cross-notice for the deposition of Dr. Atkin had they wanted to reserve time specifically to examine Dr. Atkin. *See* Ex. L at 281:16-282:2.

13

Response to Interrogatory). Contrary to the Reibers' assertion in their Opposition, the Reibers need not "reference or disclose" actual communications with Dr. Atkin to put them in issue. Instead, the Reibers only must through an affirmative act for their own benefit "place protected information in issue" by "inject[ing] a new factual or legal issue into the case," where allowing "the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *See Carpenter*, 2007 WL 5971741, at *10-13 (collecting cases).

The Reibers affirmatively put these communications at issue by characterizing Dr. Atkin's involvement with the Reibers' Patent Counsel as "essentially as a scrivener" to defend against CoorsTek's inequitable conduct claim, and by claiming Dr. Atkin's statements to the contrary are "false" and "self-serving." *See* Opp. at 10, 13; *see also Carpenter*, 2007 WL 5971741, at *11 (citing *Conkling v. Turner,* 883 F.2d 431, 435 (5th Cir. 1989) (injection of issue of knowledge of falsity of certain assertions resulted in waiver of privilege)). [10] Through Dr. Atkin's deposition, CoorsTek sought to discover the circumstances surrounding Dr. Atkin's involvement in the development of the Patents-In-Suit to rebut the Reibers' characterization of his role and denials that he was materially omitted as an inventor of the Patents-In-Suit. Yet the Reibers asserted the privilege to prevent CoorsTek from discovering these facts. This directly prejudices CoorsTek's ability to prosecute its claim. The Reibers "may not use the privilege to prejudice [CoorsTek's] case." *Carpenter*, 2007 WL 5971741, at *10; *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (a litigant implicitly waives the attorney client privilege when "assert[ing] a claim that in fairness requires examination of protected communications," as

---

[10] Indeed, CoorsTek believes that the requested discovery will show that Dr. Atkin's communications with the Reibers and their Patent Counsel have consistently demonstrated that he materially contributed to any invention and was materially omitted as a co-inventor.

14

the attorney-client privilege "cannot at once be used as a shield and a sword."). Absent discovery of Dr. Atkin's communications with Patent Counsel, CoorsTek has no way to rebut the Reibers' allegation, and in light of this prejudice, "fairness requires examination of protected communications." *Bilzerian*, 926 F.2d at 1292. The Reibers cannot use the privilege as both a sword and a shield; the Reibers have waived any privilege by implication by asserting characterizations of the very communications CoorsTek wishes to discover to defend against CoorsTek's inequitable conduct claim in this case and in the California state litigation.

The sum total of each of these voluntary disclosures leads to one conclusion: the Reibers waived whatever privilege may have existed with respect to Dr. Atkin.

E.   **The Reibers are not Entitled to Sanctions.**

Sanctions are not warranted in this case. As set forth above, the Reibers have not met their burden of demonstrating that (1) Dr. Atkin was the "functional equivalent" of the Reibers' employee; (2) Dr. Atkin's communications with Patent Counsel were privileged, or (3) the Reibers' voluntary disclosure and reliance on these communications did not subsequently waive whatever privilege may have existed. Accordingly, CoorsTek's Motion should be granted and the Reibers are not entitled to sanctions under Fed. R. Civ. P. 37(a)(5)(B) or any other authority. Moreover, "[T]he court must not order [sanctions] if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5). This means that CoorsTek's Motion must be "justified to a degree that could satisfy a reasonable person." *Lang v. Intrado, Inc.*, 2007 WL 3407366, at *5 (D. Colo. Nov. 13, 2007) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The Reibers have essentially admitted that CoorsTek's position is, at a minimum, substantially justified, as their counsel stated in Dr. Atkin's deposition

that the contours of the privilege were less than clear.  *See* Ex. L at 188:2-190:2.  Sanctions should be denied for this reason as well.

### III.   CONCLUSION

The Reibers, as the proponent of the attorney-client privilege, bear the burden of making a "detailed factual showing" that that (1) the communications at issue are in fact privileged and (2) that the privilege was not waived.  The Reibers have not met this burden.  Accordingly, the Reibers' instruction to Dr. Atkin not to answer questions regarding his communications with the Reibers' Patent Counsel was improper, and CoorsTek is entitled to discover the nature and content of those communications.

WHEREFORE, CoorsTek respectfully requests that the Court grant its Motion and enter an order granting discovery regarding the nature and content of Dr. Atkin's communications with the Reibers' Patent Counsel.

Dated this 23rd day of December, 2009.

                                   Respectfully submitted,

                                     s/ *Jared B. Briant*
                                   Natalie Hanlon-Leh
                                   Peter J. Kinsella
                                   Nina Y. Wang
                                   Jared B. Briant
                                   FAEGRE & BENSON LLP
                                   1700 Lincoln Street, Suite 3200
                                   Denver, Colorado 80203
                                   Telephone: (303) 607-3500
                                   Facsimile: (303) 607-3600
                                   Email: nhanlon@faegre.com
                                                  pkinsella@faegre.com
                                                  nwang@faegre.com
                                                  jbriant@faegre.com

                                   *Attorneys for Plaintiff CoorsTek, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on December 23, 2009, I electronically filed the foregoing **COORSTEK'S REPLY IN FURTHER SUPPORT OF EXPEDITED MOTION TO COMPEL DICOVERY OF COMMUNICATIONS BETWEEN ROBERT ATKIN AND DEFENDANTS' PATENT COUNSEL [REDACTED FOR PUBLIC FILING]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following persons at the given email addresses:

James K. Lewis
Patton Boggs, LLP
1801 California St., Suite 4900
Denver, Colorado 80202
jlewis@pattonboggs.com

Robert J. Yorio
Kenneth B. Wilson
Colby Springer
Myrna M. Schelling
Carr & Ferrell LLP
2200 Geng Road
Palo Alto, California 94303
ryorio@carrferrell.com
kwilson@carrferrell.com
cspringer@carrferrell.com
mschelling@carrferrell.com

                                                          s/ *Jared B. Briant*